# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

  vs.

JOSE MANUEL ORTIZ-DEL RIO,

    *Defendant.*

Case No. 10-10179-01-EFM

## MEMORANDUM AND ORDER

Presently before the court is Defendant Jose Manuel Ortiz-Del Rio's (Ortiz-Del Rio's ) motion to suppress statement (Doc. No. 18). This court held a suppression hearing on March 28, 2011, and ordered further briefing. For the following reasons, the court grants the motion, and suppresses all statements made by the defendant.

### I. Background

On November 17, 2010, at about 6:30 a.m., three armed federal agents from Immigration and Customs Enforcement (ICE) went to Julio Martinez's apartment to arrest him and initiate deportation proceedings due to a recent drug trafficking conviction. The agents did not have a warrant. The three agents were wearing government issued khaki pants, a jacket, and ICE badges around their neck, with at least one wearing a cap with the ICE logo on it.

The agents knocked on the door and Martin Martinez answered. Julio Martinez then came to the door and granted the agent's permission to enter. Once inside, the agents asked if anyone else was in the house, and Julio Martinez responded that someone was in the bedroom. An agent then went to the bedroom and saw the defendant, Ortiz-Del Rio, who the government described as a "fully-clothed Hispanic man . . . lying on the bed in the dark pretending to be asleep."[1] Ortiz-Del Rio complied with the request to come out to the living room, and was patted down for weapons. According to the government, Martin Martinez seemed nervous, briskly paced, and continually asked use the restroom. The agents did not report any suspicious behavior from Ortiz-Del Rio.

While two officers began interviewing the Martinez brothers, Agent Gregorio Perez turned his attention to Ortiz-Del Rio. He asked Ortiz-Del Rio his name, date of birth, and then asked where he was born. In response to the last question, Ortiz-Del Rio responded "here." Agent Perez testified that "here" could mean on earth, or North America, so he asked whether Ortiz-Del Rio was born in Wichita, and the defendant nodded his head yes. Agent Perez testified that the thought it odd that he received a non-verbal response rather than, as the first time, a verbal one, so he repeated the question. Again, the defendant only nodded his head. Agent Perez then took out a notebook and pen and again asked Ortiz-Del Rio his name, birthday, and where he was born. He received verbal responses to the first two inquiries, but only a non-verbal response to the third. So, Agent Perez ordered Ortiz-Del Rio to answer verbally, were you born in Wichita? At this point, Ortiz-Del Rio admitted to being born in Mexico. Agent Perez inquired about his immigration status, and Ortiz-Del Rio replied "working on it." He was then transported to the ICE office for processing.

---

[1] Although the government has continually asserted that defendant was only "pretending" to be asleep, it has produced no argument or evidence that he wasn't actually asleep at the start of the early morning encounter.

-2-

Ortiz-Del Rio now moves to suppress all statements made at the time of the arrest, and statements made while in custody at the ICE office, claiming that all statements were taken in violation *Miranda* and are the result of an illegal detention and arrest. The government counters that Ortiz-Del Rio was not unlawfully detained and that the statements were properly taken.

## II. Analysis

Courts have interpreted the Fourth Amendment to require various standards of reasonableness based on three different categories of police-citizen encounters. First are consensual encounters, which do not implicate the Fourth Amendment.[2] Second are investigatory detentions, or *Terry* stops, which "are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity."[3] Third are custodial arrests that must be supported by probable cause.[4] It is well established that *Miranda* warnings need not usually be given under either a consensual encounter or a *Terry* stop.[5]

"An encounter is consensual if the defendant 'is free to leave at any time during the encounter.'"[6] The encounter transforms from consensual to a seizure "when that person has an objective reason to believe he or she is not free to end the conversation with the officer and proceed

---

[2] *See United States v. Reeves*, 524 F.3d 1161, 1166 (10th Cir. 2008).

[3] *United States v. Torres Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998) (quoting *United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996)).

[4] *Id.*

[5] *United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008)

[6] *United States v. Esparza-Mendoza*, 386 F.3d 953, 957 (10th Cir. 2004) (quoting *Torres-Guevara*, 147 F.3d at 1264).

on his or her way."[7]  After a seizure occurs, the next issue become whether it constitutes a non-custodial *Terry* stop, or a custodial arrest.[8]

Typically, a valid *Terry* stop "usually involves no more than a very brief detention without the aid of weapons or handcuffs, a few questions relating to identity and the suspicious circumstances, and an atmosphere that is substantially less police dominated than that surrounding the kinds of interrogation at issue in *Miranda*."[9]  For *Miranda* purposes, however, an individual is in custody if he is "deprived of his freedom of action in any significant way,"[10] which generally occurs when a suspect's freedom is "restricted to a degree consistent with formal arrest."[11]  The test for whether *Miranda* applies is whether, under the totality of circumstances, a reasonable person "in the suspect's position would have understood [the] situation . . . as the functional equivalent of formal arrest."

Police officers are not required to administer *Miranda* warnings to everyone they question; rather, *Miranda* only applies when an individual is subject to custodial interrogation.[12]  "Generally, *Miranda* warnings are not implicated in the context of a valid *Terry* stop."[13]

---

[7] *Id.* (quoting *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996)).

[8] *See United States v. Gandarilla-Estrada*, No. 98-1001, 162 F.3d 1174, 1998 WL 781040 (10th Cir. Nov. 6, 1998).

[9] *Id.* at 1275-76 (internal quotations omitted).

[10] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[11] *United States v. Lamy*, 521 F.3d 1257, 1263 (10th Cir. 2008)

[12] *United States v. Eckhart*, 569 F.3d 1263, 1275 (10th Cir. 2009).

[13] *Id.*

"*Terry* stops must be limited in scope to the justification for the stop."[14]  "Thus, the officer may question the detainee during the stop in order to dispel or confirm his or her suspicions, but any further detention is elevated to an arrest, unless there is consent."[15]  Further, *Terry* stops must be based, at their inception, on an objectively reasonable and articuable suspicion that the person seized has or is engaged in criminal activity.[16]  "Whether . . . an investigative detention is supported by an objectively reasonable suspicion of illegal activity does not depend on any one factor but on the totality of the circumstances."[17]

Here, at least at the time Ortiz-Del Rio made his statement that he was born in Mexico, he was subject to a seizure, and the encounter was no longer (if it had ever been) consensual.  Although the initial encounter with the Martinez brothers was consensual, Ortiz-Del Rio was ordered out of the bedroom, asked to sit on the floor and repeatedly questioned.  The government contends that the encounter was consensual.  Whether or not that was the case at the outset, the Court need not decide, because it is clear that by the time the Agent ordered Ortiz-Del Rio to answer the place of birth question orally, after having received four previous answers to that question which were clearly not satisfactory to the Agent, Oritz-Del Rio could not have had an objectively reasonable belief that he

---

[14] *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1992).  *See also United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975); *Terry v. Ohio*, 392 U.S. 1, 29 (1968).

[15] *Gandarilla-Estrada*,162 F.3d 1174.

[16] *United States v. Soto-Cervantes*, 138 F.3d 1319, 1322 (10th Cir. 1998).

[17] *United States v. Soto*, 988 F.2d 1548, 1555 (10th Cir. 1993).

was free to not answer the question but to leave the encounter.[18]  Because Ortiz-Del Rio was seized, continued questioning under *Terry* must be supported by at least reasonable suspicion.

None of the facts presented by the government, however, establish the reasonable suspicion required to question Ortiz-Del Rio pursuant to *Terry*.  In this case, three federal officers went to an apartment in search of one man, and happened upon Ortiz-Del Rio.  The government summarily presumes that Ortiz-Del Rio's mere association with a drug dealer, coupled with his decision to sleep in his clothes, somehow establishes reasonable suspicion.  What's more, the government points to the nervous behavior of a different individual, and not Ortiz-Del Rio.  Even after direct questioning by the Court during the evidentiary hearing, the government did not proffer, either during the hearing or in the post-hearing briefing allowed by the Court, any basis supporting its bald assertion that the agents had reasonable suspicion that Ortiz-Del Rio was in the country illegally. There is simply nothing in the record that remotely supports a finding of reasonable suspicion to question Ortiz-Del Rio.  As such, any questioning of Ortiz-Del Rio that went beyond officer safety was not warranted.[19]

The government cites to two unpublished Tenth Circuit cases to support its contention that "*Miranda* is not implicated in a residential situation where the immigration officers were not

---

[18]The fact that the encounter was not happening on the street, as is the case for most consensual encounter and most *Terry* stops, but in the house where Ortiz-Del Rio was (at least pretending to be) sleeping further supports this conclusion.  It is one thing to "leave" an encounter with law enforcement and continue on your way when one is on the street, but it is unclear where Ortiz-Del Rio would have gone should he have felt free to leave.  However, the nature of the intensifying questioning by the agent is sufficient to conclude that, by the time of the fifth question, the defendant could not have objectively felt free to leave, so the question of what heightened analysis is required to determine if one is free to leave the house he was already in is not one the Court has to reach on these facts.

[19]The agents were clearly justified in bringing Ortiz-Del Rio out into the living room, checking him for weapons, and ascertaining his name, and this Opinion should not be read otherwise.  It was the events subsequent to those preliminary, officer-safety issues, which give rise to the Court's concerns.

questioning the defendant in contemplation of criminal charges."[20] The cases relied upon, however, are distinguishable. In *United States v. Alvarado-Lopez*,[21] the Circuit upheld the district court's finding that *Miranda* warnings were not necessary when federal agents received a tip from an informant that the defendant was in the United States illegally, and were then invited into the home and told by a co-occupant that the defendant was there illegally. The courts found that the encounter was consensual and that the defendant was not under any form of duress when he volunteered his response.[22] This is clearly distinguishable from the present case, where there was no informant tip and no separate confirmation from a co-occupant that the defendant was in the country illegally. Further, the facts are clear that Oritz-Del Rio was asked at least four times where he was born before being ordered to answer, clearly erasing any indicia of a consensual encounter. Accordingly, the present case is distinguishable from *Alvarado-Lopez*.

The government also relies on *United States v. Gandarilla-Estrada*,[23] for the proposition that *Miranda* warnings were not required when a suspect was questioned by immigration authorities. The facts in *Gandarilla-Estrada*, however, are markedly different from those here. There, officers received extremely detailed tips from a confidential informant, which were corroborated, linking occupants of a house to various crimes, and identifying them as illegally present in the United States. As officers approached the house, one individual fled through an adjacent field. An officer nearby who had listened to radio traffic saw a suspect that matched the description and location of the

---

[20] Doc. 28, p. 4.

[21] 991 F.2d 806, 1993 WL 125415 (10th Cir. April 19, 1993).

[22] *Id.*

[23] 162 F.3d 1174, 1998 WL 781040 (10th Cir. Nov. 6, 1998).

person who fled. He stopped the individual and requested identification. Because his answers were suspicious, and because he matched the description of the fleeing suspect, he was held until identified as the one who had fled. Combined, the district court found and the circuit court agreed that the initial encounter was a *Terry* stop based on objectively reasonable and articulable suspicion.

The cases cited by the government are clearly distinguishable from the present facts because in the cited cases, officers had articuable reasonable suspicion to question the suspects pursuant to *Terry*. In this case, however, there was simply no showing of reasonable suspicion to question Ortiz-Del Rio. Indeed, the only facts the government points to are that he was in an apartment with someone recently convicted of drug trafficking and was "pretending" to sleep in his clothes. Those factors do not give rise to reasonable suspicion, and thus any questioning under *Terry* was impermissible. Further, the encounter, at least by the time the defendant was ordered to answer the question orally, was no longer consensual, but custodial. Accordingly, any responses given to questions in the absence of *Miranda* warnings must be suppressed.

Further, any statements made after Ortiz-Del Rio was taken to the ICE station for processing must be suppressed as fruit of the poisonous tree, because Ortiz-Del Rio would never have been taken to the station but for being forced to answer an incriminating question absent reasonable suspicion.

In short, none of the facts presented by the government establish that the authorities had reasonable suspicion to believe that any person at the apartment other than Julio Martinez would be violating the law. Morever, the agents had no reason to suspect that Ortiz-Del Rio had committed or was in the process of committing a crime. Any indicia of a consensual encounter ended when Ortiz-Del Rio was questioned five times, in a clear indication that the agent was rejecting his prior

answers, and ordered to answer a question about his birth place orally. Because the federal officers lacked even reasonable suspicion to question Ortiz-Del Rio, and because the continued questioning and orders exceeded the bounds of a consensual encounter and constituted an impermissible *Terry* stop, Ortiz-Del Rio's statements must be suppressed

**IT IS THEREFORE ORDERED** that Defendant's Motion to suppress defendant's statements (Doc. 18) is hereby GRANTED.

**IT IS SO ORDERED**.

Dated this 12th day of April, 2011.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE